**E-FILED**
Monday, 10 November, 2014  08:57:17 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| LINCOLN A. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 11-4064-SLD-JAG |
| | ) | |
| COUNSELOR JAY SHEPLER, C/O | ) | |
| ALAN L. COMBITES, I/A TY EASLEY, | ) | |
| LT. BRUCE FISHER, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION
FOR NEW TRIAL, OR IN THE ALTERNATIVE, MOTION FOR REMITTITUR**

Plaintiff, by his undersigned counsel, for his response to Defendants' renewed motion for judgment as a matter of law, or in the alternative, motion for new trial, or in the alternative, motion for remittitur, states as follows:

**INTRODUCTION**

On September 23, 2014, after a two day trial, a federal jury concluded that Defendants Shepler, Combites and Easley were responsible for the attack that Mr. Lee suffered by his cellmate. All three Defendants were aware of Mr. Lee's prior complaints regarding his immediate safety and his requests to be transferred to a new cell. They admitted to receiving documents from Mr. Lee regarding his concerns.  Nevertheless, none of them lifted a finger to properly investigate Mr. Lee's claims. Mr. Lee was never interviewed and neither was his cellmate, who subsequently attacked Mr. Lee – as predicted.

Defendant Easley claimed to have conducted an "informal" investigation but had no documents or reports to substantiate that claim. (Trial Tr., p. 335, lines 4-7). Both Combites and Shepler admitted they could have called classification and requested that Mr. Lee be moved. (Trial Tr., p. 127, lines 3-8; p. 207, lines 3-21.) They both did nothing. Combites admitted he could have at least taken Mr. Lee out of his cell

temporarily to have a sergeant come speak with him. (Trial Tr., p. 208, lines 1-12) Again, this did not happen.

As a result, Mr. Lee was violently attacked by his cellmate. He was physically injured during the attack and required medical attention. Additionally, for at least ten days prior to the attack, Mr. Lee lived in constant fear of being assaulted, and he feared being raped and killed.  In light of this evidence, the jury ruled in Mr. Lee's favor and awarded him $75,000.00 in compensatory damages; $30,000.00 in punitive damages against Defendant Easley; $10,000.00 in punitive damages against Defendant Shepler; and $10,000.00 in punitive damages against Defendant Combites.

Defendants offer no valid basis for judgment as a matter of law, a new trial or remittitur. Their brief is a rehash of arguments that this Court previously rejected in Defendants' motion for summary judgment and during their motion for a directed verdict. Their brief also requests this Court to reweigh the evidence, which is not permitted under either Fed. R. Civ. Pro 50 or 59. In short, the jury's verdict was supported by the facts and evidence, and its damage award was supported by the evidence and well within the range of awards that have been upheld in similar cases. Accordingly, Mr. Lee respectfully request that Defendants' motion be denied in its entirety.

## LEGAL STANDARD

"The law imposes a high standard for overturning a jury verdict" *Pierson v. Hartley*, 391 F.3d 898, 903 (7th Cir. 2004). If this Court determines that "the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed," this Court must allow the jury's verdict to stand by denying Defendants' renewed Rule 50(b) Motion for Judgment as a Matter of Law. *Mathur v. Board of Trustees of Southern Illinois University*, 207 F.3d 938, 941 (7th Cir. 2000). In other words, this Court may not overturn the jury's verdict unless this Court finds that "no rational jury could have found for the plaintiff." *Emmel v. Coca-Cola Bottling Co of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996). "This is obviously a difficult standard to meet." *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 343, (7th Cir. 2005). Courts "accord great deference to the jury's decision, particularly if affected by issues of credibility." *McMath v. City of Gary*, 976 F.2d 1026, 1032 (7th Cir.

1993)(citations omitted). The Seventh Circuit has described a challenge to sufficiency of the evidence as "a daunting task, given the deferential standard that applies to such reviews." *Cruz v. Town of Cicero*, 275 F.3d 579, 586 (7th Cir. 2001); *see also Bachenski v. Malnati*, 11 F.3d 1371, 1374 (7th Cir. 1993)(party seeking to overturn a jury verdict "has a tough row to hoe to convince a court that the evidence adduced at trial cannot support a verdict").

Based upon the above standards, there is no basis for granting Defendants' renewed motion, as the jury's verdict was supported by more than sufficient evidence, and the jury made a valid credibility determination to believe Mr. Lee over the Defendants.

**I.     A Reasonable Jury Could Have Concluded That The Defendants Were Deliberately Indifferent To The Risk That Plaintiff Would Be Attacked.**

The jury correctly found that the Defendants were deliberately indifferent to Mr. Lee by failing to protect him from his cellmate in violation of the Eight Amendment and 42 U.S.C. § 1983. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to guarantee prisoners' safety. *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010), citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Here, the Defendants' actions violated the Eighth Amendment because they did not take *reasonable* measures to protect Mr. Lee.

 "To state a failure to protect claim, a plaintiff-inmate must allege that (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) defendant-officials acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (citing *Farmer*) (internal quotations omitted). With respect to the second element, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citing *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)) (internal quotations omitted). Again, there was ample evidence presented at trial that Mr. Lee placed all three Defendants on notice of the specific threats made against him and they did not respond reasonably. As a result of their deliberate indifference, Mr. Lee was harmed.

The jury diligently spent numerous hours with the jury instructions and the verdict form, which consisted of only one count against each of the three Defendants. *Manning v. Miller*, 2005 WL 3078048, at * 4(N.D.Ill. Nov, 14, 20055)(Kennelly, J.)(the jury's sophisticated consideration of the verdict form "reflects the careful and discerning job that it did evaluating the evidence and claims during its lengthy deliberation. This was anything but a runaway jury…").

### a. Defendants Shepler and Combites

The evidence and testimony at trial made it clear that all of the Defendants had notice of Mr. Lee's concerns and fears of his cellmate. Mr. Lee testified that he notified all three Defendants of the threats his cellmate made, including being raped. He notified them on multiple occasions but they did nothing to confirm or discredit his complaints.

As to Defendants Shepler and Combites, Mr. Lee testified that he met with Defendant Shepler on more than one occasion regarding his fears. Mr. Lee testified that he met with Defendant Shepler approximately ten days before the attack and told him that "I was in fear for my life. I told him that my cellie hit the correspondence box above my head while I was asleep, and basically I wanted to be moved, that I was in fear." (Trial Tr., p. 94, lines 206). Additional evidence was admitted that Defendant Shepler documented Mr. Lee's concerns and sent an email to Defendant Easley regarding them. Further, evidence was admitted that Defendant Shepler did nothing to follow up on Mr. Lee's concerns. Mr. Lee testified as follows: "I followed up. I followed up. After – a lot of time of the threat about rape, that's when I immediately followed up with Shepler, and he just basically said, you know, I, I sent the request or the information to I.A." (Trial Tr., p. 101, lines 2-6). Defendant Shepler also admitted that he had the capabilities to contact Placement regarding a cell change for Mr. Lee. Again, Defendant Shepler did not even make a call to contact them regarding Mr. Lee's concerns. (Trial Tr., p. 177, lines 3-8).

Mr. Lee also approached Defendant Combites with his concerns about his cellmate. (Trial Tr., p. 97). Mr. Lee provided Defendant Combites with a request slip and also followed up with Defendant Combites. Defendant Combites never followed up with Plaintiff regarding his concerns. (Trial Tr. P. 122, lines 10-12). Defendant Combites was the wing officer assigned to Mr. Lee's wing and part of his duties was to protect inmates, including Mr. Lee:

"A. The wing officer pretty much, I would say, a liaison between the inmate and the sergeant, lieutenant and everything. They come to you with an issue or – and, and then you either handle it yourself or hand it up the chain of command. You ensure that they get to chow, yard. You also ensure the safety, security, make sure – fire, nothing's going on, bogus gambling, pretty much everyday occurrence on a wing.

Q. So, part of your duties is to ensure the safety of the inmates you're supervising, correct?

A. Right."

(Trial Tr., p.196, lines 4-15).

Defendant Combites admitted in his request to admit that he handed a request slip to Defendant Easley regarding Mr. Lee's concerns. At trial, he attempted to dispute this allegation against him and indicated his responses to the request to admit were inaccurate. (Trial Tr., pps. 201-203). Defendant Combites also admitted that he has the capabilities to separate two cellmates:

"Q. If there's an immediate threat on the tier and the supervisor is not present, do you have any authority to separate the two individuals?

A. Yes.

Q. And what can you do with them?

A. I would remove them from the cell. I would bring them down, put them into the office, and then call the immediate supervisor, whether that be a sergeant or a lieutenant.

Q. So, you do have the capabilities at least to separate two individuals for a period of time?

A. Right. Yes."

(Trial Tr., p. 208, lines 1-12).

Finally, Defendant Combites had the power to follow up on Mr. Lee's request for a cell change and the request slip Mr. Lee provided to internal affairs and failed to do so. (Trial Tr. p. 215, lines 8-25).

### b. Defendant Easley

Defendant Easley was by far the most at fault here for Mr. Lee's injuries, and that was reflected in the punitive damages the jury awarded against him. The evidence presented at trial indicated that Mr. Easley was aware of Plaintiff's complaints regarding his cellmate. Mr. Lee testified that he even wrote a letter to Defendant Easley expressing gave the request to Combites, he said he would give it to Easley, what was the next thing that occurred regarding your request to move out of the cell with Mr. Tate? Answer: I also wrote Internal Affairs Easley myself, a request slip. And I wrote Placement -- yes, I wrote Placement as well." (Trial Tr., p. 98, lines 4-10).

Again, Defendant Easley testified that he conducted an "informal investigation" and concluded there was no threat of harm to Plaintiff. (Trial Tr., pps. 338-339). However, Defendant Easley could produce no documents showing he did any type of investigation. (Trial Tr., p. 335) Notably, Defendant Easley never even came and spoke with Mr. Lee regarding his concerns prior to the attack. (Trial Tr., pps. 98-99). The jury reasonably found that Defendant Easley did absolutely nothing in response to Plaintiff's complaints.

Defendant Easley also had the capabilities to call the Placement officer and get Mr. Lee moved out of his cell:

"Q. You had the ability to call Housing, too, or Placement to move inmates as well?

A. Sure.

Q. And that just takes one phone call to Placement, correct?

A. Yes.

(Trial Tr., p. 330, lines 16-21).

Most importantly, the evidence that clearly demonstrated Defendant Easley's deliberate indifference to Mr. Lee was his failure to speak with anyone regarding Mr. Lee's complaints prior to the attack. (Trial Tr., pps. 340-341).

### c. The Evidence Showed that Plaintiff's Injuries Were Caused by The Defendants' Deliberate Indifference.

Defendants' argument that Mr. Lee is not entitled to damages because it was the Placement Officer that is responsible for cell assignment is without merit. The Defendants were the proximate cause of Plaintiff's injuries. They were on notice of the complaints

made by Mr. Lee and it was foreseeable that Mr. Lee's cellmate would act on his threats and that Mr. Lee would be injured.  Each of the Defendants could have removed Mr. Lee from the cell prior to the attack, but they failed to do so. There is no break in the causal chain. The Defendants' conduct in not performing an investigation, failing to following up with Mr. Lee or even temporarily separating Mr. Lee and his cellmate, is the proximate cause of the injuries Mr. Lee suffered. Additionally, there was no evidence presented that the Placement Officer received any notification of Mr. Lee's concerns. Mr. Lee did write to the Placement Officer, but no evidence was presented that the Placement Officer actually received the letter. Furthermore, these Defendants never contacted the Placement Officer to shift the burden to that individual:

"Q. Now, the only way that Placement would know to move someone is if you had contacted them to say there's an issue, correct?

A. That is incorrect.

Q. How else would they know?

A. Any other staff member could call and let them know. Any inmate could let – write them a letter and let them know. I mean, there's several ways that the Placement office could be aware – made aware of an issue.

Q. So, Officer Combites could have contacted Placement?

A. If he was working day shift, yes, he could.

Q. Counselor Shepler could have contacted Placement?

A. Absolutely.

Q. Lieutenant Fisher could have contacted Placement?

A. Yes.

Q. You could have contacted Placement?

A. Yes. So could the other 200 employees that are there.

Q. If they're made aware of the situation?

A. If they're aware of the situation, sure."

(Trial Tr., pps. 362-363)

Again, Mr. Lee was at the mercy of these Defendants to take his complaints seriously, properly report them and do any necessary follow up. They failed to do so, Mr. Lee was injured, and the jury held the Defendants liable because of this.

Defendants additionally argue that Mr. Lee's failure to refuse his housing assignment breaks the causal chain. Again this argument is without merit. Mr. Lee testified that if an inmate refuses housing, the inmate is punished and loses good time. This was not a viable option for Mr. Lee.  Mr. Lee testified that if he refused housing "you get, the time when I was looking at the paper, it was – you get three months segregation, three months "C" grade, meaning all your privileges is taken away, and three months added onto your sentence." (Trial Tr., p. 112, lines 17-21). Additionally, refusing housing would not have solved the problem with his cellmate. Refusing housing would not trigger an investigation into Mr. Lee's complaints about his cellmate.

Defendants presented these arguments to the jury, and the jury did not credit them. (p. 465, lines 11-25, pps. 413-414). The Defendants were the proximate cause of Mr. Lee's damages, and the jury correctly decided as much based upon the evidence presented at trial.

### d.  Defendants Are Not Entitled to Qualified Immunity

Qualified immunity shields law enforcement officers from liability in so far as their conduct does not violate well-established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The right at stake in this case—prisoner's Eight Amendment prohibition against cruel and unusual punishment —is neither obscure nor the subject of debate. It is well-established prison officials have a duty to protect inmates from inmate on inmate violence. Both the Eighth and Fourteenth Amendments "impose upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoners" *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir.2008); (citing Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Under the facts adduced at trial, and the testimony of Mr. Lee, it was reasonable for this Honorable Court to deny the Defendants' qualified immunity. Based upon Mr. Lee's testimony, he complained to all three Defendants that his cellmate had threatened to rape and kill him. He tried over and over to follow up with the Defendants and they all did nothing. Further, Mr. Lee testified that the Defendants were not following up or investigating his claims out of retaliation for Mr. Lee's grievance writing. Viewing the facts in the light most favorable to Mr. Lee, Defendants cannot argue that their conduct in

failing to protect an inmate from attack could be construed as a violation of Mr. Lee's constitutional rights. The Seventh Circuit has long held that "some governmental actions are so clearly beyond the pate that a reasonable person should have known of their unconstitutionality even without a closely analogous case." *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000).

## II.     There is No Basis For A New Trial.

A new trial is "proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). In ruling on a 59(a) motion, the court has discretion to weigh the evidence but "cannot grant a new trial just because it believes the jury got it wrong. *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). However, the court may only set aside a verdict "if no rational jury could have rendered the verdict. *Willis v. Lepine*, 698 F.3d 826, 836 (7th Cir. 2012)(quoting *Moore et rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008). The Seventh Circuit has also noted that a jury verdict deserves deference when the case involves "simple issues but highly disputed facts." *Id.*

The Defendants make five arguments to support their motion. First, the verdict was against the manifest weight of the evidence; second, the amount of the compensatory damages was excessive; third, the evidence was insufficient for an award of punitive damages; fourth, the punitive damage award was unconstitutionally excessive; and fifth, the Court erred in its jury instructions. All five arguments lack merit, and Mr. Lee will address each in turn.

### a.     The Evidence Supported the Jury's Verdict.

A court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000); *see also Hall v. Gary Community Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002). Although a mere scintilla of evidence is not sufficient to sustain a verdict, the Court is not to substitute its view of the contested evidence in place of the jury's determination. *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). A jury verdict is not to be set aside if, viewing the evidence in the light most favorable to the prevailing party, there exists

within the record any reasonable basis to support the verdict, leaving issues of credibility and weight of evidence to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002). A trial court may grant a motion for a new trial where "the clear weight of the evidence is against the jury verdict, the damages are excessive or for some other reason the trial was not fair to the moving party." *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993) (citing *Walden v. Ill. Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992)). However, the Seventh Circuit has cautioned that "only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Emmel*, 95 F.3d at 629.

Defendants make two arguments to support their position. First, that Mr. Lee lied when he testified that he never told anyone he was attacked by two people. Second, that the only evidence that Mr. Lee's cellmate was a gang member was Mr. Lee's own self-serving testimony. Neither of these arguments hold water.

The jury heard the testimony of Mr. Lee and that of the Defendants. The jury decided to credit Mr. Lee's version over Defendants.' On the issue of the alleged statement about being attacked by two people, defense counsel pointed out the purported impeachment of Mr. Lee with use of  Nurse Law's report. (Trial Tr., pps. 468-469). The jury was able to consider the alleged "lie" by Mr. Lee. It appears from the verdict, this was of little significance.

All testimony is at some point self-serving. If Mr. Lee did not prevail at trial, he could have as easily argued that Defendant Easley's statement that the cellmate was not in a gang was self-serving. Defendants' brought forth no evidence to contradict Mr. Lee's statement that his cellmate was in a gang. Defendant Easley merely testified that the "department's database" did not show he was a gang member. (Trial Tr., pps. 368-369) They never produced any such proof. Notably, Defendant Easley's evasive testimony regarding how he did not recognize gang tattoos likely damaged his credibility in front of the jury and cast doubt on his version. (Trial Tr., pps. 366-367).

**b.    The Amount of Compensatory Damages Was Not Excessive and Was Supported By the Evidence.**

A jury "has wide discretion in determining damages, so long as it has a reasonable basis." *Am. Nat. Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 437 (7th Cir. 1997) (citation omitted). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of fact finding." *Spina v. Forest Preserve Dist. of Cook County*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002), citing *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). Therefore, the Court may not "substitute [its] view of a proper award for that returned by the jury." *Galard v. Johnson*, 504 F.2d 1198, 1202 (7th Cir. 1974). This is true even if the record leaves this Court "with the uncomfortable feeling that the verdict is too high." *Huff v. White Motor Corp.*, 609 F.2d 286, 297 (7th Cir. 1979).

Judicial review of jury compensatory damage awards are to be limited to three questions: (1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases. *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006). As described below, none of these considerations support a remittitur in this case.

**1.    The Verdict Is Not "Monstrously Excessive" And Is Rationally Based On The Evidence Presented At Trial[1]**

The general rule is that a jury is uniquely capable of evaluating the injuries caused to plaintiffs. Defendants do very little to contest Mr. Lee's showing of damages here.

Mr. Lee's damages start with the attack at the hands of his cellmate. Mr. Lee testified that he suffered a "swollen eye, busted lip, lacerations to the head and mouth, inside the mouth, scratches, front and back." (Trial Tr., p 103, lines 8-10). There was also a stipulation that he received medical attention and suffered from headaches for a few

---

[1] Plaintiff has omitted duplicative sections dealing with the "rational connection" and "monstrously excessive" inquires. The Seventh Circuit has explained that the two are both ways of asking the same question. *Deloughery v. City of Chicago*, 422 F.3d 611, 619 n.4 (7th Cir. 2005) citing *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713-14 (7th Cir. 2004).

weeks after the attack. (Trial Tr., pps. 159-161). The jury could have even found that Defendants allowed this attack to happen and, in fact, wanted it to happen because of Mr. Lee's grievance writing.

Additionally, the damages also include the ten days Mr. Lee lived in fear while trying to get any one of the Defendants to protect him. He was fearful of being beaten, raped or even killed. He was locked inside a small cell with the individual making these threats. He had no idea when the attack would come. What compounded his fear that much worse was the fact that his cellmate was a gang member and Plaintiff was not affiliated with any gangs. (Trial Tr., 137, lines 13-25).

Plaintiff may prove emotional injuries without medical evidence. *Deloughery v. City of Chicago*, 422 F.3d 611, 619–20 (7th Cir. 2005). After all, "'[t]he state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove ..., but if it can be ascertained it is as much a fact as anything else.'" *O'Sullivan v. City of Chicago*, 474 F. Supp. 2d 971, 974, n. 3 (N.D. Ill. 2007) citing *Arave v. Creech*, 507 U.S. 463, 473 (1993). In *Waits v. City of Chicago*, the court explained, "[t]he jury was presented with evidence, in the form of plaintiff's own testimony, regarding his physical pain and suffering following the arrest, and they were therefore permitted to make the rational connection that defendants' tortious conduct caused plaintiff's injuries." No. 01 C 4010, 2003 WL 2130277, at *3 (N.D. Ill. June 6, 2003). Likewise, although Mr. Lee did not present psychological testimony, the jury heard Mr. Lee describe extensively how the Defendants' actions caused him emotional distress and how he lost the trust of the correctional officers. (Trial Tr., pps. 120-121).

The cumulative psychological and emotional effect of the violations cannot be understated. The very place that the attack occurred was inside his cell. Mr. Lee was incarcerated and his only safety was his cell. That was lost after this attack. The individuals paid to protect his safety failed, and then they attempted to blame Mr. Lee and even brought disciplinary charges against him. These officers not only failed to protect Mr. Lee, but also attempted to cover it up and blame Mr. Lee himself. In denying a motion for remittitur, Judge Debevoise of the New Jersey District Court stated it well:

> As detailed above, numerous excessive force cases involving false arrest have settled for six figure amounts, even when the physical injuries are minor. When similar cases have gone to trial, juries have awarded even seven figure verdicts.

> The shock, horror, and powerlessness that a law abiding citizen feels when brutalized by the police is considerable and likely to lead to emotional damage of long duration. Anyone who would try to reduce these encounters to the cost of bandages and gauze would do well to consider the value of living in a free society. Few free men would choose to voluntarily surrender the right to be safe from state sanctioned violence and arbitrary incarceration, even at many multiples of the damages awarded to [the plaintiff].

*Lesende v. Borrero*, No. 06-4967 (DRD), 2011 WL 4765162, at *7 (D.N.J. Oct. 7, 2011).

### 2.      The Award Is Comparable To Awards In Similar Cases

The Court's "task is not to balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater. Rather, [courts] inquire whether the [] verdict is within reasonable range." *Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir. 1990). The Seventh Circuit has explained this principle:

> Some of the cases presented by the defendants appear more egregious with lower damages, while some of the cases presented by Farfaras appear less egregious with higher damages. Our responsibility, however, is not to fit this case into a perfect continuum of past harms and past awards. Rather, our role in reviewing awards for abuse of discretion is to determine if the award in this case was roughly comparable to similar cases, such that the instant award was not so beyond the pale as to constitute an abuse of discretion.

*Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566–67 (7th Cir. 2006). Against the range of permissible awards, courts apply the "maximum recovery rule," which directs that the amount should be based on the "highest amount of damages that the jury could properly have awarded based on the relevant evidence." *Jabat, Inc. v. Smith*, 201 F.3d 852, 858 (7th Cir. 2000).

The Court does not determine what the award should have been, but rather assesses whether the jury's award must be rejected as completely irrational. E.*g., E.E.O.C. v. AIC Security Investigations, Ltd*., 55 F.3d 1276, 1286 (7th Cir. 1995) ("[I]t may be that [the plaintiff] did not really deserve as much as [he got], but that is not the question. The question is whether that award was grossly excessive, and it was not.").

In *Ibanez v. Velasco*, the Northern District upheld a $2.5 million verdict for compensatory damages to a plaintiff who had been beaten and kicked by correctional officers when she attempted to pick up her boyfriend's property at Cook County Jail. No.

96 C 5990, 2002 WL 731778, at *8 (N.D. Ill. Apr. 25, 2002). The plaintiff's physical injuries were not severe; they included bruising, scratches, and neck pain. *Id*. at 10. The court denied the motion for remittitur because the verdict was sufficiently supported by testimony of plaintiff's emotional injuries. That testimony included that the plaintiff felt depressed and would spontaneously cry; she experienced anxiety, panic attacks, nightmares and recurrent bulimia. *Id*. at 11.

Likewise, in *Mason v. City of Chicago*, the Northern District denied the defendants' motion for remittitur and upheld the jury verdict of $650,000 for excessive force and malicious prosecution. 641 F. Supp. 2d 726, 732 (N.D. Ill. 2009). Concerning the excessive force, there was testimony that the plaintiff suffered an orbital fracture from being kneed in the eye by the defendant officer. *Id*. at 730. The plaintiff in Mason testified about how he emotionally suffered during his appearances at criminal trial, and each time the trial was continued. *Id*. at 731. Furthermore, the court found compelling the testimony concerning:

> a wide range of emotional damages, including that the [p]laintiff's personality was transformed, that relationships with his friends and family were seriously impaired, that his previously high-level of physical activity decreased significantly, that he suffered from an irrational fear when he saw people who resembled [the officer], [and] that his self-confidence was seriously diminished.

*Id*. Ultimately, the court held that "either the physical or the emotional set of injuries would be sufficient to conclude the verdict was not irrational." *Id*. Meaning, the court found the award of $650,000 would have been reasonable solely for the emotional damages. Thus, the $75,000.00 awarded to Mr. Lee for his physical and emotional damages—just as significant as those endured by the Mason plaintiff—cannot be irrational.

The jury heard the evidence and found that $75,000.00 was fair and reasonable compensation for Mr. Lee's injuries. A "court should not substitute a jury's damages verdict with its own figure merely because…a plaintiff in a similar case was perhaps not able to plead his facts to the jury as well." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 313 (7th Cir. 2010). Each case is different as is each plaintiff. The jury here heard the testimony from Mr. Lee and argument from counsel and the compensatory

damages award was in line with the evidence presented. Defendants are not entitled to a new trial regarding the compensatory damage award.

### C.    The Evidence Supported An Award of Punitive Damages

Defendants contend that Mr. Lee's evidence and testimony did not support an award of punitive damages. "A jury may award punitive damages in a § 1983 case if it finds that the defendants' conduct was motivated by evil intent or callous indifference to the plaintiff's federally protected rights." *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002). In assessing whether a punitive damage award is constitutionally appropriate, the Supreme Court has directed courts to focus their evaluation on three guideposts: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of the punitive damages awarded and the harm or potential harm suffered by the plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

Here, the Court properly instructed the jury that it may award punitive damages against a defendant "only if you find that his conduct was malicious or in reckless disregard of Mr. Lee's rights." (Dkt. 112, p. 20). The Court defined malicious conduct as "accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff" and reckless disregard as "complete indifference to Plaintiff's safety or rights." *Id*. The evidence presented at trial was that Plaintiff wrote a lot of grievances; remarks were made to him about his grievance writing; he contacted at least four IDOC staff regarding his fears of his cellmate; absolutely no investigation was conducted; and as a result he was attacked and injured. Most outrageous is that after he was attacked, he was the one that was disciplined and sent to segregation. The Defendants overall callous lack of concern for inmate-on-inmate violence most likely contributed to the award of punitive damages. All three Defendants testified that inmates are always complaining about issues with cellmates and usually nothing comes of the disputes. It appears they made this assumption with Mr. Lee, and thus conducted no investigation nor took any action. The jury rightly held them accountable for their choices to ignore Mr. Lee's concerns.

Based on the trial testimony and the evidence submitted, a jury easily could have concluded that Defendants failed to protect him from his cellmate out of ill-will and spite

and for the purpose of placing Mr. Lee at risk. In fact, the overwhelming majority of the evidence presented at trial suggested that there was no basis to ignore Mr. Lee, other than out of spite for his prolific grievances.

Additionally, the jury could have reasonably concluded that the Defendants gave false testimony in an effort to avoid liability. *See, e.g.*, *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) ("A plaintiff may establish that the defendant acted with reckless disregard for his federally protected rights by showing that the defendant's employees lied, either to the plaintiff or the jury, in order to cover up their discriminatory actions."); *Lampley Learning Curve Toys v. Onyx Acceptance Corp*., 340 F.3d 478, 483 (7th Cir. 2003) ("Because a jury could have found that Onyx engaged in a cover-up rather than a good faith investigation of Lampley's retaliatory discharge claim, we find that the punitive damages issue was properly before the jury."). The loss of the email, the absence of records documenting Easley's "investigation," and the impeachment of the Defendants with the use of the request to admit contradicts Defendants' testimony in multiple respects. These facts taken in tandem also support an inference that the officers were lying to make up for their failure to look into Mr. Lee's concerns. The jury may have also concluded that the Defendants' conduct was reprehensible because they allowed the attack to happen to punish Mr. Lee as he was a prolific grievance writer. Mr. Lee testified as follows:

> Q. Now, in any of those follow-up conversations with Shepler, was the issue of grievances brought up?
>
> A. Yes. At one point of time when I had a conversation with Mr. Shepler, he did state to me that, Staff does not like grievance-writers, which that's well-known in prison anyway.
>
> Q. How did you take that when he told you that staff does not like grievance-writers?
>
> A. I took it as that being retaliation for me not being moved. That they were using that not to move me out of danger.
>
> (Trial Tr., p. 101, lines 9-20).

The jury awarded punitive damages against Defendant Easley in the amount of $30,000.00, and against Defendants Shepler and Combites each in the amount of $10,000. Not only were these amounts not excessive in light of the evidence, assigning more

punishment to Defendant Easley than Defendants Shepler and Combites reflects the jury's use of discretion in setting the amount of those damages. Defendants' cursory challenge to the punitive damages award is without merit and is not grounds for a new trial.

**D.      The Punitive Damage Award Was Not Unconstitutionally Excessive**

The punitive damages award was not excessive and did not constitute a denial of Defendants' due process rights. As Defendants correctly point out, a punitive damages award must be viewed for excessiveness in light of three factors: (1) the reprehensibility of the defendants' misconduct; (2) the disparity between the actual or potential harm suffered and the punitive damages award; and (3) the civil or criminal penalties allowed for comparable conduct. *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 575 (1996).  When considered under this test, the jury's punitive damages award was clearly not excessive to the point of denying Defendants' due process rights.

Defendants argue that their conduct was not reprehensible based on their story at trial that they did take some type of action in response to Mr. Lee's complaints about this cellmate. The jury, however, evidently did not credit this testimony. Instead, the jury found that the Defendants not only failed to protect Mr. Lee from his cellmate, but also that they did so to punish him for being a serial grievance writer. Furthermore, the jury may have believed that the Defendants attempted to cover up their misconduct by losing the email and letters sent by Mr. Lee.  The Defendants' abusive misconduct is, by any measure, reprehensible, and the damage caused by that conduct is worthy of the punitive damages award given in this case. In closing argument, undersigned counsel asked for punitive damages that would serve as an example and send a message to IDOC that citizens will not tolerate a prison being run in such a manner. The jury sent such a message, and that message should be respected by leaving the punitive damages in place.

The jury awarded $50,000 in punitive damages; $30,000.00 against Defendant Easley; $10,000.00 against Defendant Shepler and $10,000.00 against Defendant Combites. The compensatory damages awarded to Mr. Lee were $75,000.00. At a ratio of 2 to 3, these damages awards are eminently reasonable and clearly reflective of the facts of the case as the jury found them – and not the facts as the Defendants want them to be as presented in their motion. *See State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 425 (2003) (explains that, while it has "rejected the notion that the constitutional line

is marked by a simple mathematical formula," a 4:1 damages ration has consistently been found to "comport with due process"). The ratio of damages at issue here is well below the acceptable awards. Similar awards have been permitted in this circuit. *See May v. Springborn, et. al.*, 01-01254 (C.D. Ill. Aug. 11, 2014)(Bruce, J.)(concluding that a ratio of 4:1 damages is permissible under *State Farm*).

Additionally, the punitive damages are appropriate in this case, as this case is not a car accident or a business tort. This is a case involving something categorically more important—violations of an individual's constitutional rights.

The isolated cases Defendant cite do not support the argument that the punitive damages award exceeded some supposed upper limit of reasonableness for this type of case. Prior verdicts are, at best, imperfect guides to what is reasonably acceptable. *O'Sullivan v. City of Chicago*, 474 F. Supp. 2d 971, 982 (N.D. Ill. 2007) (cautioning "against excessive and uncritical reliance on and comparisons with the amount of awards in other cases"). Cases are highly fact-specific and differ enormously in terms of witness credibility, presentation quality, nature and extent of the injuries, victims' vulnerability, jurors' reactions to the particular circumstances, and hosts of other, highly unique, variables. Nevertheless, there is nothing here that suggests Mr. Lee's suffering was categorically less severe than in Defendants' cited cases. Defendants' motion also avoids any analysis of the experiences its officers put Mr. Lee through, including the physical and emotional injuries that resulted.

The final guidepost for punitive damages compares the punitive damage award to civil or criminal penalties authorized for comparable conduct. There are no laws imposing civil or criminal penalties on prison officials for the type of conduct here. This is the very reason Congress passed § 1983 to protect an individual's civil rights from abuse by governmental officials. Because of this, the comparable conduct guidepost should be given less weight than others. *See Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 875-76 (N.D. Iowa 2004)(citing *Williams*, 352 F.3d at 1016 n. 77).

Accordingly, in light of Defendants' reprehensible conduct and the fact that Mr. Lee suffered a violation of his constitutional rights, the jury's award of $30,000.00 against Defendant Easley; $10,000.00 against Defendant Shepler and $10,000.00 against Defendant Combites was reasonable and does not constitute grounds for a new trial.

**E.      The Court Did Not Err In Instructing the Jury**

There is a two-part inquiry in response to a challenge to jury instructions: first, whether the jury instructions adequately stated Seventh Circuit law; and if the answer is no, then whether the error prejudiced one of the parties because the jury was likely confused or misled. *See Otto v. Variable Annuity Life Ins. Co*., 134 F.3d 841, 847 (7th Cir. 1998). No perfect set of jury instructions is required, as long as they are correct legal statements. *Lasley v. Moss*, 500 F.3d 596, 589, (7th Cir. 2007). Reversal is only justified if the instruction misguides the jury so much that the litigant is prejudiced. *Id*. When determining if the instructions were legally sound, any challenged instruction must be considered in their entirety rather than in isolation, to determine if the instructions as a whole were sufficient to inform the jury of the applicable law. *DePaepe v. General Motors Corp*., 33 F. 3d 737, 743(7th Cir. 1994); *United States v. Dack*, 987 F. 2d 1282, 1284 (7th Cir. 1993)(we must construe the instructions in their entirety, not in isolation, and look for overall fairness and accuracy.) The final drafting of jury instructions is a matter left to the Courts discretion. Spiller v. Brady, 169 169 F. 3d 1064, 1066 (7th Cir. 1999).

**1.      The Court Properly Instructed the Jury On The Issue of Deliberate Indifference**

The deliberate indifference instruction was taken from Seventh Circuit Pattern Instructions 7.14 and is an accurate statement of the law. *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)). "The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials 'take *reasonable measures* to guarantee the safety of the inmates.' Therefore, those charged with the high responsibility of running prisons are required, as a matter of constitutionally imposed duty, to 'protect prisoners from violence at the hands of other prisoners.'" *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010)(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(emphasis added)). *See also*, *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) (an officer must have actually known of a substantial risk of harm to the plaintiff's safety, yet failed to take *appropriate steps* to protect him from the specific danger.)(emphasis added).

Defendants' entire argument that the given instruction was in err rests on the position that the use of "reasonable" was improper. Fatal to the Defendants' argument, however, is that this is the law in this circuit. The Seventh Circuit recognizes that the Eight Amendment imposes a duty on prison officials that once they are aware of a serious risk, they have an obligation "to take reasonable measures to abate it." *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir.2006). The instruction given by this Honorable Court properly informed the jury of the law. Obviously the jury concluded that the measures taken by the Defendants were not reasonable and therefore found for Mr. Lee. Notably, in support of their motion for summary judgment, Defendants argued that Mr. Lee could not establish liability because the Defendants "reasonably" responded to Mr. Lee's concerns. (Defendants' Summary Judgment Memo, p. 10). Now they are attempting to argue that they did not even need to act reasonably in response to Mr. Lee's complaints.

This Honorable Court took a step further with this instruction, and over Mr. Lee's objection, included additional language to instruct the jury that "if the Defendant took reasonable measure to respond to a risk, then he was not deliberately indifferent, even if Plaintiff was ultimately harmed. Mere negligence on the part of a prison official is not a constitutional violation." (Dkt. 112, p. 18). This additional language further clarified to the jury the higher stand that Mr. Lee had to prove to prevail on the deliberate indifference standard. Defendants' argument that "the instruction given by the court did not convey to the jury the high standard that Mr. Lee must meet and invited a jury to second guess the defendants' action" is simply false. The instruction plainly established the higher standard at play. As for Defendants' comment that the jury was invited to "second guess" the actions of Defendants, this implies that the jury was not permitted to disagree with the conduct of Defendants. As the trier of fact, it was clearly up to the jury to determine which (if any) of Defendant's actions were reasonable. That was their job. The jury determined that the Defendants' actions – if they believed Defendants undertook any - were not reasonable. That the jury resoundingly found against Defendants is not evidence of confusion.

Defendants' argument that the "Seventh Circuit has never approved of a deliberate indifference instruction that stated an official could be held liable for failing to act reasonably since the decision in *Gibbs v. Franklin*, 49 F.3d 1206 (1993)" is a red herring.

Undersigned counsel has been unable to locate any cases wherein the Seventh Circuit disapproved of the use of such an instruction. Defendants' brief does not cite to any cases that show such an instruction was reversible error or even improper.

Defendants have not shown that the given instruction confused or misled the jury. The jury did not ask any questions regarding this instruction, or the language used therein. Under the standard set forth in *Farmer*, the jury was properly instructed on the law regarding deliberate indifference. The evidence elicited at trial was sufficient to support the jury's conclusion that the Defendants acted with deliberate indifference. Accordingly, Defendants are not entitled to a new trial on this point.

**2.      The Court Properly Instructed the Jury On Punitive Damages**

Defendants contend the Court erred because the punitive damages instruction (Dkt. 112, p. 20) does not accurately state the law regarding the availability of punitive damages. Defendants' argument is a non-starter. To begin, the instruction this Honorable Court gave the jury was Seventh Circuit Pattern Instruction 7.24. The only modification was that one of the elements – the Defendants' financial conditions – was removed, as the Defendants chose to submit any evidence about their financial conditions.

Punitive damages are available in § 1983 cases upon a showing of a defendant's "reckless or callous indifference to the federally protected rights of others." *Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 930 (7th Cir. 2004). This is the mental state clearly articulated within the instruction's statement that punitive damages are only permitted once the jury has determined that the "defendant's conduct was malicious or in reckless disregard of the plaintiff's rights." (Dkt. 112, p. 20). The jury was instructed that they could award punitive damages if they found that a defendant's conduct was "malicious or in reckless disregard of Plaintiff's rights. The given instruction accurately and comprehensively instructed the jury on the appropriate standard on the issue of punitive damages.

Furthermore, the Seventh Circuit has noted the long standing principle that "[p]unitive damages are available in § 1983 cases only upon a showing of 'evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others.'" *Kyle v. Patterson*, 196 F.3d 697-698 (7th Cir. 1999). (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983)); *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th

Cir. 2007). The Seventh Circuit has reiterated this standard in a recent unpublished opinion and noted that the punitive damages standard mirrors the Eighth Amendment standard for deliberate indifference. *Write v. Miller*, 561 Fed.Appx. 551, 555 (7th Cir. April 14, 2014).

Pattern instruction 7.24 is similar to the language identified by the Seventh Circuit and conforms to those requirements. Further, the Seventh Circuit has recognized similar instructions to the one given by this Honorable Court. *See Fox v. Hayes*, 600 F.3d 819, 846 (7th Cir. 2010) (In upholding verdict of punitive damages as consistent, the Court noted that the instruction indicated that punitive damages could be assessed if the defendant's actions were malicious or reckless and defining malicious as conduct "accompanied by ill will or spite or is done for the purpose of injuring plaintiffs.").

This Honorable Court properly instructed the jury on punitive damages. Defendants' arguments to the contrary have no merit. As a result, Defendants suffered no prejudice, and the motion for a new trial should be denied on this ground.

## CONCLUSION

For the reasons discussed herein, this Honorable Court should deny Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial, or in the Alternative, Motion for Remittitur in its entirety.

Respectfully submitted,

/s/ Louis J. Meyer
*Counsel for the Plaintiff*

Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
309.713.3751
louismeyer@meyerkiss.com

## CERTIFICATE OF SERVICE

I, Louis J. Meyer, certify that on November 10, 2014, Plaintiff's Response to Defendants' Renewed Motion for Judgment was filed through the District Court's CM/ECF automated docketing system thereby causing service upon the following:

Nicole Roth
Christopher L. Higgerson
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
t. 217.782.5819
*Counsel for Defendants*

/s/ Louis J. Meyer
*Counsel for the Plaintiff*

Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
309.713.3751
louismeyer@meyerkiss.com